**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 21-cv-01971-NYW-STV

RAYMOND MARSHALL,

     Plaintiff,

v.

CHIEF INVESTIGATOR LINDA DIX,
CITY OF COLORADO SPRINGS,
MICHAEL ANDERSON,
MARGRET RADFORD,
JAN MARTIN,
SCOTT HENTE, and
LARRY SMALL,

     Defendants.

---

## ORDER ON MOTIONS TO DISMISS

---

This matter is before the Court on Defendant Chief Investigator Linda Dix's Motion to Dismiss (the "Dix Motion to Dismiss") [Doc. 33] and the Motion to Dismiss Under Rule 12(b)(6) by the City Defendants (the "City Motion to Dismiss," and collectively with the Dix Motion to Dismiss, "the Motions to Dismiss"). [Doc. 34].[1] Upon review of the Motions, the related briefing, and the applicable case law, the Dix Motion to Dismiss is **GRANTED in part** and **DENIED in part**, and the City Motion to Dismiss is **GRANTED**.

## BACKGROUND

The Court draws the following facts from the Amended Verified Civil Rights Complaint With Request for Trial By Jury (the "Amended Complaint") and takes them as true for the purposes

---

[1] This case was reassigned to the undersigned on August 5, 2022. [Doc. 43].

of the instant Motions to Dismiss.  [Doc. 25].  In 2009, the El Paso County District Attorney's Office "opened an investigation" into Plaintiff Ray Marshall ("Plaintiff" or "Mr. Marshall") and his real estate business, LandCo Equity Partners ("LandCo").  [*Id.* at ¶ 21].  The investigation was spearheaded by the then-Investigator in Charge, Defendant Linda Dix ("Ms. Dix").  [*Id.* at ¶¶ 21, 34, 36].  The Amended Complaint describes the investigation as an investigation "into Mr. Marshall's real estate ventures from 2000 to 2009" and "into all aspects of Mr. Marshall's life starting as early as 1996."  [*Id.* at ¶ 41].  In November 2009, a grand jury indicted Mr. Marshall on charges "relating to real estate transactions from 2000 to 2007" (the "2009 Case").  [*Id.* at ¶¶ 23, 43].[2]  Mr. Marshall alleges that the grand jury's indictment was based on Ms. Dix's "false evidence and omission of exculpatory evidence."  [*Id.* at ¶ 23].  After the 2009 Case's trial, which began in March 2012, Mr. Marshall was acquitted on all 42 counts brought against him.  [*Id.* at ¶¶ 24, 26, 49].

Approximately one month before the 2009 Case's trial, El Paso County prosecutors filed a new criminal case against Mr. Marshall (the "2012 Case").  [*Id.* at ¶ 25].  The charges in the 2012 Case arose "out of a tri-party real estate development deal" between LandCo, the City of Colorado Springs, Colorado (the "City"), and the United States Olympic Committee ("USOC").[3]  [*Id.* at ¶ 55].  According to Plaintiff, LandCo had agreed to renovate and develop two buildings owned by LandCo so that the USOC could use the buildings for temporary office space and a permanent USOC headquarters.  [*Id.* at ¶ 56].  The City was to pay for the construction and renovation costs and the USOC was to sign a long-term lease with the City, as well as cover the operating expenses

---

[2] Plaintiff does not identify the charged offenses, but states that there were 42 charges in total. [Doc. 25 at ¶ 26].

[3] Plaintiff refers to the USOC as both the "United States Olympic Committee" and the "United States Olympic Commission."  *See* [Doc. 25 at ¶¶ 2, 55].

of the buildings. [*Id.*]. However, the development deal "did not go through as planned," and Plaintiff alleges that the City breached the agreement, resulting in Mr. Marshall losing several million dollars of his personal money. [*Id.* at ¶¶ 57-58]. Plaintiff asserts that the 2012 Case stems from an Application and Affidavit for Arrest Warrant (the "Arrest Warrant Affidavit"), drafted and filed by Ms. Dix, in which Ms. Dix "knowingly failed to include exculpatory information and also included many outright false statements." [*Id.* at ¶ 61]. After a lengthy process, the charges against Mr. Marshall in the 2012 Case were eventually dismissed with prejudice on May 20, 2020. [*Id.* at ¶ 31].[4]

Plaintiff claims that the 2012 Case was the result of a conspiracy between Ms. Dix and a number of then-City Council members and City employees: Defendants Michael Anderson, Margaret Radford,[5] Jan Martin, Scott Hente, and Larry Small (collectively, with the City, the "City Defendants").[6] *See, e.g.*, [*id.* at ¶¶ 71-72, 79]. Specifically, according to Mr. Marshall, the individual City Defendants and the USOC "colluded against Mr. Marshall to sabotage" the USOC

---

[4] The procedural posture leading to the ultimate dismissal of the 2012 Case is lengthy. After the conclusion of the 2009 Case, the trial court dismissed the 2012 Case on the basis that "it should have been part of the 2009 [C]ase"; though unclear from the Amended Complaint, it appears that this dismissal was prompted by a motion to dismiss filed by Mr. Marshall. [Doc. 25 at ¶ 27]. The Colorado Court of Appeals reversed the trial court's dismissal in 2014 and remanded the case to the trial court. [*Id.*]. In 2015, Mr. Marshall filed a renewed motion to dismiss in the 2012 Case, which the trial court granted, [*id.* at ¶ 28], a decision which was again reversed and remanded by the Court of Appeals. [*Id.*]. Mr. Marshall's subsequent renewed motion to dismiss was denied by the trial court. [*Id.* at ¶ 29]. Finally, in 2019, the prosecution filed two amended complaints, [*id.* at ¶ 30], before the charges against Mr. Marshall were eventually dismissed with prejudice on May 20, 2020. [*Id.* at ¶ 31]. Plaintiff does not describe what happened between the filing of the amended complaints and the ultimate dismissal of the 2012 Case. *See* [*id.*].

[5] Plaintiff spells Ms. Radford's first name as "Margret." *See* [Doc. 1 at ¶¶ 11, 14]. Ms. Radford spells her first name as "Margaret" in her court filings. *See, e.g.*, [Doc. 34 at 3]. The Court thus uses the spelling "Margaret."

[6] Defendants Radford, Martin, Hente, and Small (the "City Council Defendants") were, at times relevant to this case, members of Colorado Springs's City Council. *See* [Doc. 25 ¶¶ 11-14]. Defendant Anderson was the City Manager and/or the Assistant City Manager. [*Id.* at ¶ 10].

deal, "so that they could insulate themselves from adverse market conditions" and induce Mr. Marshall to sell them one of LandCo's building for a low price. [*Id.* at ¶ 71]. Mr. Marshall contends that this collusion is evidenced in a number of audio tapes of City Council executive sessions and emails[7] sent to and from the City Defendants. [*Id.* at ¶¶ 71, 73]. For example, Plaintiff represents that in one recording, Defendant Hente stated that he planned to meet with the then-District Attorney "to see if there were ways to bring charges against Mr. Marshall in [an] attempt to circumvent the USOC real estate deal." [*Id.* at ¶ 78(E)]. Ms. Dix came into possession of these audio tapes in 2011, but hid the tapes "for almost a decade," [*id.* at ¶ 73], despite "numerous" court orders that "all discovery be turned over to Mr. Marshall's defense attorneys." [*Id.* at ¶ 75]. Mr. Marshall alleges that Ms. Dix and "the City entered into an agreement to hold those tapes secret," and Ms. Dix withheld this purportedly exculpatory evidence "at the urging of an in conjunction with City, the City [Council] Defendants and Defendant Anderson." [*Id.* at ¶¶ 73-74]. According to Plaintiff, Ms. Dix and the City Defendants "conspired for years to keep the emails and tapes secret to continue the malicious prosecution against Mr. Marshall." [*Id.* at ¶ 76].

Mr. Marshall initiated this case on July 20, 2021 and filed the Amended Complaint on October 26, 2021. [Doc. 1; Doc. 25]. In the Amended Complaint, Mr. Marshall raises the following claims: (1) a malicious prosecution claim under 42 U.S.C. § 1983; (2) a § 1983 due process claim; (3) a § 1983 claim pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) (a "*Franks* claim"); (4) a § 1983 conspiracy claim; and (5) a municipal liability claim against the City. *See generally* [Doc. 25 at 34-42]. Aside from Plaintiff's fifth claim, Plaintiff does not specify against whom each claim is brought. [*Id.*].

---

[7] While Mr. Marshall references undisclosed emails a number of times in his Amended Complaint, he does not describe the contents of the emails in detail or identify the senders or recipients of the emails. *See, e.g.*, [Doc. 25 at ¶¶ 71, 73, 76, 96].

Ms. Dix and the City Defendants each separately moved to dismiss Plaintiff's claims in their entirety. [Doc. 33; Doc. 34]. Ms. Dix couches her arguments under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiff's claims against her should be dismissed because (1) she is entitled to absolute immunity, [Doc. 33 at 5], and (2) she is entitled to qualified immunity. [*Id.* at 9]. In addition, she argues that portions of Mr. Marshall's claims should be dismissed for lack of standing and because they are untimely. [*Id.* at 3, 18]. The City Defendants, meanwhile, move to dismiss Plaintiffs' claims against them for failure to state a claim upon which relief can be granted. *See* [Doc. 34]. Each Motion to Dismiss is fully briefed. *See* [Doc. 37; Doc. 38; Doc. 41; Doc. 42]. These matters are thus ripe for disposition.

## LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that even pro se litigants cannot rely on conclusory, unsubstantiated allegations to survive a 12(b)(6) motion). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the

line from conceivable to plausible"). The ultimate duty of the Court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

### I.   The Dix Motion to Dismiss

#### A.   Subject Matter Jurisdiction

Because it is a threshold issue, the Court first addresses Ms. Dix's invocation of Rule 12(b)(1), which suggests that Ms. Dix believes that this Court lacks subject matter jurisdiction over Plaintiff's claims. *See United States v. Springer*, 875 F.3d 968, 973 (10th Cir. 2017) ("Jurisdiction is a threshold question that a federal court must address before reaching the merits." (quotation omitted)). In her Motion, Ms. Dix sets forth the legal standard governing Rule 12(b)(1) motions, and contends that the Dix Motion to Dismiss presents a facial attack to the Court's subject matter jurisdiction. [Doc. 33 at 2]. Nevertheless, she does not expressly argue that this Court lacks subject matter jurisdiction over any of Plaintiff's claims. *See* [*id.*]. Indeed, statute of limitation defenses, absolute prosecutorial immunity, and qualified immunity are properly raised via Rule 12(b)(6) rather than Rule 12(b)(1). *See McRoberts v. Rosas*, No. 21-2470-DDC-TJJ, 2022 WL 4482481, at *1 n.2 (D. Kan. Sept. 27, 2022) (citations omitted). Upon a review of Ms. Dix's Motion, the Court does not find that any of her arguments attack the Court's subject matter jurisdiction.

The closest Ms. Dix comes to raising a jurisdictional argument is when she argues that Plaintiff lacks standing to bring portions of his claims. *See* [Doc. 33 at 18-20]. "The Supreme Court's 'standing jurisprudence contains two strands: Article III standing, which enforces the

Constitution's case-or-controversy requirement, and prudential standing[,] which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Wilderness Soc'y v. Kane Cnty.*, 632 F.3d 1162, 1168 (10th Cir. 2011) (en banc) (citations, ellipses, and quotations omitted). Article III standing, or constitutional standing, is a jurisdictional prerequisite to suit and requires "(1) an 'injury in fact,' (2) sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (alterations in original)). Meanwhile, the prudential standing doctrine is comprised of "judicially self-imposed limits on the exercise of federal jurisdiction that are founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Hill v. Warsewa*, 947 F.3d 1305, 1309 (10th Cir. 2020) (quotation omitted). This doctrine encompasses various limitations on the exercise of jurisdiction, including the general prohibition against a litigant asserting another person's legal rights. *Wilderness Soc'y*, 632 F.3d at 1168. But, unlike constitutional standing, "prudential standing is not a jurisdictional limitation and may be waived." *Niemi v. Lasshofer*, 770 F.3d 1331, 1345 (10th Cir. 2014) (quotations omitted).

Here, Ms. Dix argues that Mr. Marshall lacks standing because his claims belong to his bankruptcy estate. *See* [Doc. 33 at 19 ("[A] trustee, as the representative of the bankruptcy estate, is the proper party in interest, and is the only party with standing to prosecute causes of action belonging to the estate.")]. But the Tenth Circuit has determined that this issue implicates principles of prudential standing. *Brumfiel v. U.S. Bank*, 618 F. App'x 933, 936-37 (10th Cir. 2015) ("[T]he prudential standing and real party in interest doctrines[] . . . preclude Ms. Brumfiel from proceeding with her claims for money damages" because "[o]nce Ms. Brumfiel filed her

bankruptcy petition, she was not the real party in interest."). Thus, Plaintiff's standing argument does not raise jurisdictional concerns. *Niemi*, 770 F.3d at 1345. And because Ms. Dix's remaining arguments—related to the statute of limitations, prosecutorial immunity, and qualified immunity— concern the merits of Plaintiff's claims rather than the Court's jurisdiction,[8] the Court will resolve the entirety of Ms. Dix's Motion to Dismiss, like the City Defendants' Motion, under Rule 12(b)(6).

### B.   Timeliness

Turning to Ms. Dix's arguments under Rule 12(b)(6), Ms. Dix first argues that Plaintiff's malicious prosecution and due process claims, insofar as they relate to the 2009 Case, are barred by the statute of limitations. [Doc. 33 at 3]. According to Ms. Dix, these claims accrued when the criminal proceedings terminated in Plaintiff's favor—April 2012.[9] [*Id.* at 4]. Because Plaintiff did not file this lawsuit within the applicable two-year statute of limitations, Ms. Dix argues that his claims are time-barred with respect to the 2009 Case. [*Id.* at 3-4]. Mr. Marshall responds that he "does not dispute that a stand-alone malicious prosecution claim stemming from only his 2009 criminal case would be time barred," but states that this "is not the claim he brings." [Doc. 37 at

---

[8] *See Barnes v. United States*, 776 F.3d 1134, 1145 (10th Cir. 2015) ("[S]tatutes of limitations are not always—and, indeed, presumptively are *not*—jurisdictional."); *Tigano v. United States*, 527 F. Supp. 3d 232, 244 n.4 (E.D.N.Y. 2021) ("[P]rosecutorial immunity is treated as a common law immunity available upon a Rule 12(b)(6) motion."); *Neal v. Davis*, 475 F. App'x 690, 692 (10th Cir. 2012) ("[Q]ualified immunity is a defense on the merits, not a jurisdictional bar.")

[9] The Complaint does not provide the specific date of acquittal in the 2009 Case, but states that the trial began in March 2012 and that Mr. Marshall was acquitted "[a]fter a month-long trial." *See* [Doc. 25 at ¶¶ 26, 49]. Ms. Dix suggests in her Motion that Mr. Marshall was acquitted on April 23, 2012, relying on a state-court brief filed by Mr. Marshall in the course of his state criminal appeal. *See* [Doc. 33 at 4]. While the Court can take judicial notice of state court filings, *Rose v. Utah State Bar*, 471 F. App'x 818, 820 (10th Cir. 2012), it can do so "only to show their contents, not to prove the truth of matters asserted therein." *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006). The Parties did not provide the docket to the 2009 Case, and this Court was unable to obtain it independently.

5].  Instead, he argues that "Defendants' 2009 conduct is integral to and relevant proof of the 2012 malicious prosecution [and] fabrication of evidence," and under the continuing violation doctrine, the statute of limitations should be extended for claims based on a continuous series of related, wrongful acts.  [Doc. 36 at 5-6].  In her Reply, Ms. Dix argues that the purported relevance of evidence related to the 2009 Case has no bearing on whether Mr. Marshall's claims are timely, and the continuing violation doctrine does not apply here because Mr. Marshall was on notice that he had suffered damages related to the 2009 Case back in 2012.  [Doc. 41 at 3-4].

"Congress did not provide a statute of limitations for actions brought under § 1983." *Herrera v. City of Espanola*, 32 F.4th 980, 989 (10th Cir. 2022).  As such, federal courts "look[] to the law of the forum state to determine the applicable statute of limitations for a § 1983 action," which typically entails "looking toward the state statute of limitations for personal injury claims." *Id.*  In Colorado, personal injury claims must be filed within two years of the date of accrual. *Gosselin v. Kaufman*, 656 F. App'x 916, 919 (10th Cir. 2016); Colo. Rev. Stat. § 13-80-102.  The date of accrual is determined by federal law.  *Gosselin*, 656 F. App'x at 919.  Malicious prosecution claims accrue "once the underlying criminal proceedings have been resolved in the plaintiff's favor."  *McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019).  The same is true for claims based on the fabrication of evidence.  *Id.* at 2154-55.

"[A]lthough a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss 'when the dates given in the complaint make clear that the right sued upon has been extinguished.'"  *Radloff-Francis v. Wyo. Med. Ctr., Inc.*, 524 F. App'x 411, 413 (10th Cir. 2013) (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)).  Here, the Amended Complaint contains information which clearly establishes that Mr. Marshall's acquittal took place in April 2012.  [Doc. 25 at ¶¶ 26, 49].

The Court respectfully agrees with Ms. Dix that any claims arising out of the 2009 Case are barred by the two-year statute of limitations for Plaintiff's § 1983 claims.  While the Court understands Mr. Marshall's position that he is not asserting separate claims for constitutional violations arising out of the 2009 Case, the Amended Complaint can nevertheless be construed to seek damages for actions allegedly taken during the 2009 Case.  *See, e.g.*, [*id.* at ¶ 1 ("Defendant Dix wrongfully and malicious caused <u>two</u> prosecutions with an aggregate of 86 criminal charges to be brought against Mr. Marshall.") (emphasis added); *id.* at ¶ 39 ("When the 2009 Case was presented to the grand jury[,] Defendant Dix caused false information to be given . . . and exculpatory evidence to be withheld."); *id.* at ¶ 102 ("Defendant Dix . . . fabricate[d] evidence . . . [and] suppressed exculpatory evidence.")].  His deadline to seek that relief passed in April 2014.  Colo. Rev. Stat. § 13-80-102.

The Court is respectfully unpersuaded by Plaintiff's argument.  Although "a § 1983 litigant may rely on the continuing violation doctrine to overcome the statute of limitations where the first in a series of acts giving rise to a single violation occurs outside of the limitations period," *Herrera*, 32 F.4th at 997, the doctrine does not save Mr. Marshall's claims here.  "[T]he continuing violation doctrine is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated," *Sierra Club v. Okla.Gas & Elec. Co.*, 816 F.3d 666, 674 (10th Cir. 2016) (citation and quotations omitted), and applies "when the plaintiff's claim seeks redress for injuries resulting from a series of separate acts that collectively constitute one unlawful act, as opposed to conduct that is a discrete unlawful act." *Hamer v. City of Trinidad*, 924 F.3d 1093, 1098 (10th Cir. 2019) (citation and quotations omitted); *see also Herrera*, 32 F.4th at 999 (explaining that the continuing violation doctrine applies "where the injury sued upon arose only after a series of connected events that together form a single

10

violation of [the plaintiff's] constitutional rights").  But acts that are "easily identifiable and individually actionable . . . that occurred outside of the limitations period, even though related to those occurring within the period, are not actionable."  *Croy v. Cobe Lab'ys, Inc.*, 345 F.3d 1199, 1202 (10th Cir. 2003) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)); *accord Howell v. Cox*, 758 F. App'x 480, 485 (6th Cir. 2018) ("[I]f [a] defendant's separate acts of wrongdoing are individually actionable, the continuing-violation doctrine does not apply.").

Here, insofar as Mr. Marshall alleges that Ms. Dix maliciously prosecuted him or fabricated evidence in the context of the 2009 Case, he identifies easily identifiable, discrete acts of wrongdoing that are individually actionable, as opposed to a course of conduct that amounts only to one constitutional violation.  Indeed, Mr. Marshall frames the acts as separate, discrete actions in his Amended Complaint.  *See, e.g.*, [Doc. 25 at ¶ 1 ("Sensing impending defeat in the <u>first</u> prosecution brought against Mr. Marshall (the 2009 case), Defendant Dix maliciously and falsely pursued a <u>second</u> prosecution against Mr. Marshall.") (emphasis added); *id.* at ¶ 23 ("In November 2009, based on Defendant[] Dix's false evidence and omission of exculpatory evidence, the grand jury issued an indictment against Mr. Marshall.")].  "[I]f an event . . . should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine to overcome the [statute of limitations] with respect to that event."  *Martin v. Nannie & The Newborns, Inc.*, 3 F.3d 1410, 1415, n.6 (10th Cir. 1993), *overruled on other grounds by Davidson v. Am. Online, Inc.*, 337 F.3d 1179 (10th Cir. 2003). Accordingly, any portion of Plaintiff's claims arising out of the 2009 Case accrued upon his April 2012 acquittal, and the statute of limitations for those claims expired in April 2014.  The Motion to Dismiss is thus **GRANTED** with respect to those claims.  In so holding, the Court does not pass on whether evidence of Ms. Dix's conduct in the course of the 2009 Case can be used to support

Mr. Marshall's claims related to the 2012 case; however, insofar as Mr. Marshall seeks relief for any alleged harm arising from the 2009 Case, those claims are time-barred, and the Court addresses Plaintiff's claims only insofar as they seek damages arising from the 2012 Case.

### C.   Absolute Immunity

Next, Ms. Dix argues that she is immune from suit in this matter under the doctrine of absolute immunity (or prosecutorial immunity). [Doc. 33 at 5].  "Absolute immunity offers certain government officials total protection from a suit for damages under 42 U.S.C. § 1983."  *Thomas v. Kaven*, 765 F.3d 1183, 1191 (10th Cir. 2014).  This protection extends to prosecuting attorneys, who are "absolutely immune for those activities 'intimately associated with the judicial phase of the criminal process.'"  *Mink v. Suthers*, 482 F.3d 1244, 1259 (10th Cir. 2007) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).  In addition, "prosecutorial immunity extends to certain agents of the prosecutor when they are engaged in performing tasks that are inherently prosecutorial in nature."  *Joseph v. Shepherd*, 211 F. App'x 692, 697 (10th Cir. 2006).  "To qualify for absolute immunity, . . . [the defendant's] action must be 'closely associated with the judicial process.'"  *Mink*, 482 F.3d at 1260 (quoting *Burns v. Reed*, 500 U.S. 478, 495 (1991)).

However, "the Supreme Court has made clear that absolute immunity is not available for 'those aspects of the prosecutor's [or agent's] responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate.'"  *Thomas*, 765 F.3d at 1191 (quoting *Imbler*, 424 U.S. at 430-31).  But absolute immunity may nevertheless attach to "administrative or investigative activities 'when these functions are necessary so that a prosecutor may fulfill his [or her] function as an officer of the court.'"  *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1490 (10th Cir. 1991) (quoting *Snell v. Tunnell*, 920 F.2d 673, 693 (10th Cir. 1990)).  "[T]here is no bright line between advocacy and investigation," *Mink*, 482 F.3d at 1261, and courts

12

apply a "functional approach" test to determine whether particular government acts are immune from legal challenges, which "looks to the nature of the function performed, not the identity of the actor who performed it." *Malik v. Arapahoe Cnty. Dep't of Soc. Servs.*, 191 F.3d 1306, 1314 (10th Cir. 1999) (citation and quotation omitted). To determine whether absolute immunity applies to a specific challenged course of conduct, courts consider (1) whether the action is closely associated with the judicial process; (2) whether the action is a uniquely prosecutorial function; and (3) whether it requires the exercise of professional judgment. *Mink*, 482 F.3d at 1261. "The more distant a function is from the judicial process, the less likely absolute immunity will attach." *Snell v. Tunnell*, 920 F.2d 673, 687 (10th Cir. 1990). "The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (alteration marks omitted).

Here, Ms. Dix argues that she is immune from suit based on absolute immunity because the actions alleged in Plaintiff's Amended Complaint "are clearly and closely associated with the judicial process, [are] inherently prosecutorial in nature[,] and necessarily required the exercise of professional judgment." [Doc. 33 at 8 (quotations omitted)]. She contends that absolute immunity applies with respect to the following challenged conduct: (1) Ms. Dix drafted and filed the Arrest Warrant Affidavit and, in so doing, intentionally left out material facts and included false or misleading assertions in the Affidavit, [*id.* (quoting Doc. 25 at ¶¶ 61, 63-64, 66-67) (quotations omitted)]; (2) Ms. Dix refused to hand over all discovery to Mr. Marshall's defense team, [*id.* (quoting Doc. 25 at ¶¶ 74-76) (quotations omitted)]; and (3) "Ms. Dix drafted or directed others to draft seven [Court Ordered Production of Records ('COPR')] applications and affidavits" that contained untrue statements. [*Id.* (quoting Doc. 25 at ¶ 93)]. In response, Mr. Marshall argues that Ms. Dix "was an investigator, not a prosecutor," and "[u]nder the required functional analysis,

[her] acts in investigating, preparing[,] and signing the affidavits for arrest, search, and COPRs do not trigger absolute immunity." [Doc. 37 at 7]. Mr. Marshall does not cite any authority in support of his argument or explain the basis of his contention that, under the functional-analysis test, Ms. Dix did not engage in acts that are inherently prosecutorial in nature. *See* [*id.*].

***The Arrest Warrant Affidavit***. Ms. Dix argues that her conduct in drafting and filing the Arrest Warrant Affidavit falls within the scope of absolute immunity protection because "Plaintiff admits that all of Ms. Dix's alleged actions and omissions 'were conducted within the scope of her official duties or employment.'" [Doc. 33 at 8 (quoting Doc. 25 at ¶ 101)]. The Court respectfully disagrees that all that is necessary for absolute immunity to attach is a simple allegation that the defendant worked within her official capacity as a government employee. "[T]he actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Buckley*, 509 U.S. at 273. The Court's inquiry focuses not on identity of the actor, but the nature of the function performed. *Malik*, 191 F.3d at 1314.

The Supreme Court has held that the "preparation and filing of . . . charging documents" is a function of an advocate and is protected by absolute immunity. *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997). This is because the "determination that the evidence [is] sufficiently strong to justify a probable-cause finding, [the] decision to file charges, and [the] presentation of the information . . . to the court" each involve the exercise of professional judgment. *Id.* at 130. Relevant here, the Tenth Circuit has stated that the reach of immunity extends to a district attorney's investigator. *See Shepherd*, 211 F. App'x at 697; *Pfeiffer*, 929 F.2d at 1489 ("It is . . . well established that this absolute prosecutorial immunity extends to state attorneys and agency officials who perform functions analogous to those of a prosecutor in initiating and pursuing civil and administrative enforcement proceedings."); *cf. Atkins v. Lanning*, 556 F.2d 485, 489 (10th Cir.

1977) (stating that district attorney staff "are inextricably tied to the quasi-judicial process of initiating, preparing, and presenting a case").

But a "complaining witness"—that is, the person "who procured an arrest and initiated a criminal prosecution," *Rehberg v. Paulk*, 566 U.S. 356, 370 (2012)—is "not entitled to absolute immunity." *Thomas*, 765 F.3d at 1192 (10th Cir. 2014) (citing *Rehberg*, 566 U.S. at 371). "A public prosecutor assumes the role of a complaining witness, and is not entitled to absolute immunity, when personally vouching for the truth of facts that provide the evidentiary basis for a finding of probable cause." *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1212 (10th Cir. 2022). In contrast to the drafting of the document, the selection of particular facts to include in the document, or the determination that probable cause exists, which all "involve[] the exercise of professional judgment," the "only function [the affiant] performs in giving sworn testimony is that of a witness." *Kalina*, 522 U.S. at 130-31.[10] "The sworn/unsworn distinction is more than critical; it is determinative." *Rivera v. Leal*, 359 F.3d 1350, 1355 (11th Cir. 2004); *see also Chilcoat*, 41 F.4th at 1212 (stating that the Tenth Circuit has "likewise observed the distinction between sworn and unsworn statements when deciding whether a prosecutor functioned as an advocate or a

---

[10] While *Kalina* could reasonably be read to apply only to the limited act of attesting to the truth of the veracity of allegations—as opposed to also applying to the making of false statements—the Court notes that many courts, including the United States Supreme Court, have construed *Kalina* more broadly. *See, e.g., Rehberg*, 566 U.S. 356, 370 n.1 (2012) (stating that "we have accorded only qualified immunity to law enforcement officials who falsify affidavits," citing *Kalina*); *Scott v. Hern*, 216 F.3d 897, 909 (10th Cir. 2000) ("The [*Kalina*] Court held that the attorney's actions in connection with the preparation and filing of the former two documents were the first steps of the prosecutorial process and therefore protected by absolute immunity. Absolute immunity did not bar, however, an action based on the alleged false statements in the sworn affidavit." (citation omitted)); *Coburn v. Nordeen*, 72 F. App'x 744, 746 (10th Cir. 2003) ("[T]he district court correctly ruled that the defendant in this case is not entitled to absolute immunity for his sworn statements made in an affidavit supporting application for an arrest warrant, but may be entitled to qualified immunity."); *Chilcoat*, 41 F.4th at 1212 ("For that sworn submission [in *Kalina*], the Court determined the prosecutor functioned not as an advocate but as a complaining witness.").

complaining witness."); *Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic*, 582 F.3d 1155, 1164 (10th Cir. 2009) ("Because [the defendant] did not personally vouch for or even list any of the facts in the Complaint/Information, he is entitled to absolute immunity on all claims.").

Here, Plaintiff's Amended Complaint does not indicate whether the Arrest Warrant Affidavit was sworn under penalty of perjury. *See generally* [Doc. 25]. However, Ms. Dix has attached a copy of the Affidavit to her Motion to Dismiss. *See* [Doc. 33-1].[11] The application and affidavit states:

> The undersigned, . . . being first duly sworn on oath moves the Court to issue an Arrest Warrant for: Raymond L. Marshall as provided in Rule 4.2 of the Colorado Rules of Criminal Procedure. AS GROUNDS THEREFORE, the undersigned applicant states that the facts submitted in support of this request are set forth in the accompanying attachment designated as Attachment "A" which is attached hereto and made a part hereof and that probable cause exists to believe that the aforementioned person has committed [criminal offenses].

[*Id.* at 2]. Similarly, Attachment A to the application and affidavit states:

> Your affiant is Deputy Chief Investigator Linda Dix of the 4th Judicial District Attorney's Office of the El Paso and Teller Counties, and states under oath that your affiant has personal knowledge of the following facts.

[*Id.* at 3]. Accordingly, insofar as Ms. Dix personally vouched for the truth of the facts contained in the application and affidavit, she acted as a fact witness, not as an advocate. *Kalina*, 522 U.S. at 130 ("Testifying about facts is the function of the witness, not of the lawyer.").

---

[11] Typically, the Court considers only the allegations contained within the four corners of the operative complaint in ruling on a motion to dismiss. *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013). However, the Court may also consider documents outside of the pleadings if those documents are referenced in the complaint and central to the plaintiff's claims and if the parties do not dispute the documents' authenticity. *Id.* Here, Mr. Marshall references the Arrest Warrant Affidavit in his Amended Complaint, *see* [Doc. 25 at ¶ 61], and it is central to his claims; thus, the Court may properly consider the Arrest Warrant Affidavit at this stage in the proceedings.

To the extent that Plaintiff's claims are based on Ms. Dix's selection of facts to include in the application and affidavit, including Plaintiff's allegations that Ms. Dix left out material facts, these acts involve the exercise of professional judgment of an advocate and are protected by absolute immunity. *See id.* at 130 ("[T]he selection of the particular facts to include in the certification to provide the evidentiary support for the finding of probable cause required the exercise of the judgment of the advocate."). But to the extent that Plaintiff's claims are based on allegations that Ms. Dix "knowingly and intentionally, or with reckless disregard for the truth, made false statements that were included in the [Arrest Warrant Affidavit]," [Doc. 25 at ¶ 115], absolute immunity does not apply, as such conduct was undertaken in Ms. Dix's role as a fact witness, not an advocate. *See Kalina*, 522 U.S. at 130; *see also Scott v. Hern*, 216 F.3d 897, 909 (10th Cir. 2000) ("Absolute immunity did not bar . . . an action based on the alleged false statements in the sworn affidavit."); *Beltran v. Santa Clara Cnty.*, 514 F.3d 906, 908 (9th Cir. 2008) ("A prosecutor doesn't have absolute immunity if [s]he . . . makes false statements in a sworn affidavit in support of an application for an arrest warrant."); *Margheim v. Buck*, No. 12-cv-01520-WJM-BNB, 2014 WL 2206940, at *4 (D. Colo. May 27, 2014) ("Because the Amended Complaint alleges that Defendant Buljko swore a false affidavit on which Plaintiff was arrested, the Court must accept that allegation as true for the purposes of the instant Motion, and therefore Defendant Buljko is not protected by absolute immunity."). Accordingly, the Motion to Dismiss is **GRANTED** insofar as Plaintiff's claims are based on Ms. Dix's alleged failure to include material facts in the Arrest Warrant Affidavit.

*The COPR Requests and Affidavits*. Ms. Dix next argues that she is entitled to absolute immunity against Plaintiff's allegations that she "drafted or directed others to draft seven COPR applications and affidavits." [Doc. 33 at 8].

Neither Party meaningfully explains the purpose of the COPR requests as they relate to Mr. Marshall's claims or Ms. Dix's immunity defense. *See* [Doc. 33 at 7-9; Doc. 37 at 4-5]. In his Amended Complaint, Mr. Marshall alleges that "[e]ven after the lengthy grand jury investigation, throughout the 2009 [C]ase, Defendant Dix continued to acquire Mr. Marshall's personal and business bank records . . . through [COPR] requests . . . which were misleading and based on material misstatements and omission[s]." [Doc. 25 at ¶¶ 43-44]. Moreover, he asserts that "in a desperate attempt to try to build the 2012 [Case] against Mr. Marshall . . . , Defendant Dix secretly caused a series of demands for Mr. Marshall's financial records to be issued" by "draft[ing] COPR applications and accompanying affidavits, and direct[ing] others to do so, that included false and misleading information and purposely excluded all the exculpatory information that she was privy to when she wrote those affidavits." [*Id.* at ¶¶ 91-92].

Insofar as Mr. Marshall's claims relate to the 2009 Case, those claims are time-barred. *See supra* Section I.B. However, the Court cannot conclude, based on the Parties' briefing, that Ms. Dix is entitled to absolute immunity with respect to COPR requests drafted in the context of investigations for the 2012 Case. Absolute immunity is not available where the actor was working in an investigative, rather than prosecutorial, capacity. *Snell*, 920 F.2d at 675; *Buckley*, 509 U.S. at 273. Mr. Marshall alleges that Ms. Dix's actions were made in the course of "build[ing]" a case against Mr. Marshall—i.e., that the challenged actions were investigative—and Ms. Dix, who bears the burden of demonstrating that she is protected by absolute immunity, fails to explain how her alleged actions were prosecutorial in nature. Accordingly, the Court cannot conclude that absolute immunity applies to Plaintiff's claims insofar as they are based on the COPR requests or affidavits.

***Refusal to Hand Over Discovery***.  Finally, Ms. Dix argues that she is entitled to absolute immunity insofar as Mr. Marshall alleges that she failed to "hand over all discovery," including audio tapes of the City's executive sessions.  [Doc. 33 at 8 (quoting Doc. 25 at ¶ 75)].  The Supreme Court has rejected the notion that absolute immunity is not available for "willful suppression by a prosecutor of exculpatory information."  *Imbler*, 424 U.S. at 431 n.34.  And the Tenth Circuit has concluded that "a prosecutor has absolute immunity from a civil damages suit[] even if [s]he deliberately withholds exculpatory information."  *Hartz v. Campbell*, 680 F. App'x 703, 707 (10th Cir. 2017) (quotation and citation omitted); *see also Robinson v. Volkswagenwerk AG*, 940 F.2d 1369, 1373 n.4 (10th Cir. 1991) (even if "the claim involves withholding evidence . . . absolute immunity from civil damages is the rule for prosecutors.").

The Third Circuit, however, has determined that where a court orders the production of certain evidence, the court order "remove[s] all discretion from the prosecution."  *Munchinski v. Solomon*, 747 F. App'x 52, 60 (3d Cir. 2018).  In other words, the prosecutor's duty to turn over evidence was no longer "advocative or discretionary; it was a judicially mandated task that was ministerial or administrative."  *Id.*; *see also Siehl v. City of Johnstown*, 365 F. Supp. 3d 587, 598 (W.D. Pa. 2019) ("When a court order, by its terms, severely limits a prosecutor's discretion, the prosecutor's duty in the face of such an order is not to advocate, but to comply."); *but see Reid v. New Hampshire*, 56 F.3d 332, 337 (1st Cir. 1995) (at the summary judgment stage, concluding that a court order requiring disclosure of "*any* exculpatory evidence" did not "displace *Imbler* immunity" because the broad language of the order "left the prosecutors with something more than a ministerial function to perform" (emphasis added) (quotation omitted)).

Here, Mr. Marshall alleges that

[o]n numerous occasions throughout the decade of Dix's hiding of the exculpatory tapes, Judge Iuppa ordered that all discovery be turned over to Mr. Marshall's

> defense attorneys.  Upon information and belief, in her capacity as lead investigator Defendant Dix would have been well aware of the Court's order.  Her refusal to hand over all discovery, and this particular hidden exculpatory evidence, in blatant contravention of repeated court orders to do so, is demonstrative of Defendant Dix's continued malice towards Mr. Marshall.

[Doc. 25 at ¶ 75].  Ms. Dix does not explain why her alleged decision to withhold evidence was discretionary, or "involved the exercise of professional judgment," *Mink*, 482 F.3d at 1261, in light of the state court's orders.  *See* [Doc. 33].  The Court is persuaded by the Third Circuit's decision in *Munchinski* and concludes that, at the pleading stage, Mr. Marshall's allegations are sufficient to establish that Ms. Dix retained no discretion to withhold the audio tapes from Mr. Marshall's defense counsel.  Unlike *Reid*, where the prosecutor retained the discretion to determine which evidence was deemed "exculpatory" and thus subject to the court's order, 56 F.3d at 337, here, Judge Iuppa ordered that "*all* discovery be turned over to Mr. Marshall's defense attorneys," [Doc. 25 at ¶ 75 (emphasis added)], such that Ms. Dix's duty to turn over the audio tapes was mandatory, not discretionary.  *See Munchinski*, 747 F. App'x at 60.  The Court is thus not persuaded that Ms. Dix has met her burden of demonstrating that absolute immunity attaches to Plaintiff's claims arising out of her alleged failure to turn over discovery.

Accordingly, Ms. Dix's Motion to Dismiss is **GRANTED in part**.  Ms. Dix is entitled to absolute immunity against Mr. Marshall's claims to the extent the claims are based on Ms. Dix allegedly omitting material exculpatory facts from the Arrest Warrant Affidavit or the failure to turn over exculpatory evidence prior to any court order.  But insofar as Mr. Marshall bases his claims on the inclusion of false statements in the Arrest Warrant Affidavit, Ms. Dix's drafting or involvement in the drafting of COPR requests, or the withholding of discovery after the state court's orders, Ms. Dix has not demonstrated that absolute immunity applies to bar Plaintiff's claims.

**D.**     **Qualified Immunity**

Ms. Dix next argues that she is entitled to qualified immunity on each of Plaintiff's four claims against her.  [Doc. 33 at 9-18].  The doctrine of qualified immunity protects government officials from individual liability for actions carried out while performing their official duties so long as their conduct does not violate clearly established constitutional or statutory rights. *Washington v. Unified Gov't of Wyandotte Cnty.*, 847 F.3d 1192, 1197 (10th Cir. 2017).  To facilitate the efficient administration of public services, the doctrine functions to protect government officials performing discretionary actions and acts as a "shield[] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Once a defendant has asserted a defense of qualified immunity, the burden shifts to the plaintiff who must establish that (1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the defendant's action. *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015).

A right is clearly established if there is a Supreme Court or Tenth Circuit decision on point or if the weight of authority in other courts provides that the right is clearly established. *See Washington*, 847 F.3d at 1197; *DeSpain v. Uphoff*, 264 F.3d 965, 979 (10th Cir. 2001).  A pleading need not contain all the necessary factual allegations to sustain a conclusion that Defendants violated clearly established law, but must only satisfy the minimum pleading requirements articulated in *Twombly* and discussed above. *See Robbins*, 519 F.3d at 1249 (recognizing that a heightened pleading standard is not required).

1.     **Malicious Prosecution and *Franks* Claims**

Ms. Dix argues that she is entitled to qualified immunity against Mr. Marshall's malicious prosecution and *Franks* claims to the extent that they are based on the Arrest Warrant Affidavit and the COPR requests.  [Doc. 33 at 12-14].  She does *not* argue that she is entitled to qualified immunity insofar as Mr. Marshall's malicious prosecution claim[12] is based on the alleged withholding of evidence in discovery after Ms. Dix was ordered to disclose that discovery by the state court.  *See* [*id.*]; *see also* [Doc. 25 at ¶ 102 (Mr. Marshall alleging in his malicious prosecution claim that Ms. Dix "suppressed exculpatory evidence")], and thus, the Court limits its analysis to Ms. Dix's express arguments.

To state a claim of malicious prosecution under § 1983, a plaintiff must allege that "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages."  *Carbajal v. McCann*, 808 F. App'x 620, 630 (10th Cir. 2020).  And "[i]n *Franks*, the Supreme Court held that affiants seeking arrest warrants violate the constitution when they knowingly, or with reckless disregard for the truth, include false statements in a supporting affidavit or omit information which, if included, would prevent the warrant from lawfully issuing."  *Kapinski v. City of Albuquerque*, 964 F.3d 900, 905 (10th Cir. 2020) (citing *Franks*, 438 U.S. at 171).  Thus, to state a claim under *Franks*, a plaintiff must allege that (1) the affiant included false

---

[12] Mr. Marshall's *Franks* claim is not based on the alleged withholding of the audio tapes.  *See* [Doc. 25 at ¶ 122 (alleging that Ms. Dix "(1) knowingly, or with reckless disregard for the truth, (2) caused false statements to be included in the arrest warrant affidavit and COPR applications and affidavits that, if omitted, would have vitiated probable cause, and Defendant Dix caused facts to be omitted from the affidavits that, if included, would have vitiated probable cause.")]; *see also* [*id.* at ¶ 75 (implying that this alleged conduct occurred after Plaintiff's 2012 arrest)].

statements in support or omitted information from an affidavit; (2) the affiant acted knowingly or with reckless disregard for the truth; and (3) if the false information were omitted, or if the omitted information were included, the warrant would not have issued. *Id.* Because the two claims are similar, the Court addresses them together.

### a. The Arrest Warrant Affidavit

First, Ms. Dix argues that Plaintiff cannot state a *Franks* claim or a claim for malicious prosecution based on the Arrest Warrant Affidavit because even absent the false information contained in the Arrest Warrant Affidavit, the Affidavit was supported by probable cause. [Doc. 33 at 11].[13] When, as alleged here, an "affidavit contains false statements, the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit." *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996) (internal quotations and citation omitted); *see also Kapinski*, 964 F.3d at 905 (a *Franks* claim arises when false information is included in affidavit and, if omitted, the warrant would not have issued). Probable cause exists where "the facts and circumstances within the arresting officer's knowledge and of which [the officer] had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to have the belief that an offense has been or is being committed by the person arrested." *Koch v. City of Del City*, 660 F.3d 1228, 1239 (10th Cir. 2011) (quotation and citation omitted). "Because probable cause is an objective standard, it may exist despite [an investigator's] false statements or material omissions." *Sanchez v. Hartley*, 299 F. Supp. 3d 1166, 1195 (D. Colo. 2017).

---

[13] Ms. Dix does not argue that she is entitled to qualified immunity as to the *Franks* or malicious prosecution claims to the extent these claims may be based on her alleged failure to turn over exculpatory evidence after ordered to do so by the state court. *See* [Doc. 33 at 11-15]. Accordingly, the Court does not address this theory of relief supporting Plaintiff's claims.

***The False Statements at Issue***.  In the Amended Complaint, Mr. Marshall identifies only one specific allegedly false statement made by Ms. Dix in the Arrest Warrant Affidavit: that Ms. Dix "falsely reported facts to include payments and indemnifications of Oz Architecture, Innovar Environmental Inc., GE Johnson, CTL Thompson, Inc. and Shavano Land Survey"; more specifically, Plaintiff alleges that Ms. Dix falsely "stated that the City was forced to pay these companies because of Mr. Marshall's pattern of racketeering, which she . . . knew to be untrue at the time."  [Doc. 25 at ¶ 67].[14]  Ms. Dix argues that setting aside this statement "does not vitiate probable cause" to arrest Mr. Marshall.  [Doc. 33 at 13].  In his Response to the Motion to Dismiss, Mr. Marshall states that Ms. Dix "ignores [the Sexton Affidavit]," which "addresses the affidavits in support of the [COPRs] and the Search Warrant ('SW')[15] in a detailed, thorough fashion" and "shows that virtually every substantive allegation in the Arrest Warrant Affidavit . . . which is in pertinent parts identical to Dix's SW Affidavit and COPR[] Affidavits – is false and misleading." [Doc. 37 at 8].  After reviewing "some of the most salient factual allegations" in the Arrest Warrant Affidavit compared against the assertions in the Sexton Affidavit, [*id.* at 8-13], Mr. Marshall concludes that "all of [his] claims are specific enough to pass Rule 12(b)(6) muster."  [*Id.* at 14].

---

[14] Because Ms. Dix is entitled to absolute immunity insofar as Plaintiff alleges that she omitted material facts from the Arrest Warrant Affidavit, the Court does not consider allegations of material omissions in its qualified immunity analysis.

[15] It is unclear what Mr. Marshall refers to when he references a search warrant, given that there are no allegations related to a search warrant in his Amended Complaint. *See generally* [Doc. 25]. Plaintiff has attached a search warrant affidavit to his Response, *see* [Doc. 37-1], and states that the search warrant affidavit "[was] referenced in [Exhibit] 1 to the [Amended Complaint], p. 2 ¶ 1."  [Doc. 37 at 6 n.6].  Plaintiff cites no legal authority for the proposition that a Court may consider extraneous documents in ruling on a motion to dismiss simply because the documents were referenced in an attachment to the Complaint. *See* [*id.*].  Nor does Plaintiff explain how the search warrant is central to his claims, *see Toone*, 716 F.3d at 521, particularly when the search warrant is not mentioned in his Amended Complaint.  The Court does not consider any search warrant affidavit in ruling on these Motions to Dismiss.

The Sexton Affidavit states that Mr. Sexton "reviewed affidavits provided to the [c]ourt for search warrants and the COPRs," but does not expressly mention the Arrest Warrant Affidavit. [Doc. 25-1 at 2].  Moreover, Plaintiff does not reference the Sexton Affidavit within the context of the Arrest Warrant Affidavit in support of his allegations that Ms. Dix fabricated allegations contained in the Arrest Warrant Affidavit; rather, the Sexton Affidavit is mentioned only once in the Amended Complaint, to support Plaintiff's allegation that "Defendant Dix obtained [Plaintiff's] bank records through [COPR requests] which were misleading and based on material misstatements and omission[s] by Defendant Dix."  [Doc. 25 at ¶ 44].

The Court is not persuaded by Plaintiff's reliance on the Sexton Affidavit in arguing that he has sufficiently stated malicious prosecution or *Franks* claims based on the Arrest Warrant Affidavit.  "[T]o state a claim, Plaintiff cannot rely simply on facts contained within exhibits and attachments; he must instead allege the essential facts within the body of the complaint itself, and thus provide fair notice to Defendants of the claims against them."  *Crayon v. Asuncion*, No. CV 20-0192-JFW (AS), 2020 WL 4904866, at *2 n.6 (C.D. Cal. June 26, 2020); *Peeples v. Kaiser Permanente The Se. Permanente Med. Grp*., No. 1:15-CV-3029-WSD-JKL, 2016 WL 11259280, at *2 (N.D. Ga. Dec. 14, 2016) ("While I refer to the exhibit [attached to the complaint] to clarify Peeples's factual allegations, I cannot rely on the exhibit to rewrite Peeples's amended complaint so that it states a claim."), *report and recommendation adopted*, 2017 WL 1682527 (N.D. Ga. May 2, 2017); *Gray v. Lagana*, No. CV 19-4858, 2020 WL 374435, at *3 (E.D. Pa. Jan. 22, 2020) ("[The plaintiff] may not rely solely on voluminous exhibits, rather than factual allegations, to state a claim.").

While Plaintiff is correct that some of the purportedly false statements referenced in the Sexton Affidavit are included in the Arrest Warrant Affidavit, *compare, e.g.*, [Doc. 33-1 at 7-8]

*with* [Doc. 25-1 at 8-9] *and* [Doc. 33-1 at 11] *with* [Doc. 25-1 at 15], it is neither this Court's nor Ms. Dix's duty to surmise that Plaintiff's allegations related to Ms. Dix's false statements in the Arrest Warrant Affidavit incorporate by reference and include the entirety of the 17-page, single-spaced Sexton Affidavit—which is not referenced in the Amended Complaint as including information about those alleged false statements and which itself does not plainly reference the Arrest Warrant Affidavit. *See Smith v. Warden, Deuel Vocational Inst.*, No. 2:18-cv-0347 DB P, 2019 WL 1367809, at *5 (E.D. Cal. Mar. 26, 2019) ("The court is not required to review exhibits to determine what plaintiff's charging allegations are as to each named defendant."). The Court declines to construe the Amended Complaint as including—wholesale, by reference—the Sexton Affidavit, given the complete lack of notice provided in the Amended Complaint to put Ms. Dix on notice of the basis of Mr. Marshall's claims. Accordingly, the Court considers only the allegations in the Amended Complaint for purposes of addressing the Parties' arguments; here, this amounts only to Mr. Marshall's allegation that Ms. Dix falsely stated that the City was forced to pay a number of private companies "because of Mr. Marshall's pattern of racketeering." [Doc. 25 at ¶ 67]; *see also* [Doc. 33-1 at 15].

***Whether Probable Cause Exists Absent the False Statement***. "Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime." *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996). "Probable cause is not a precise quantum of evidence—it does not, for example, 'require the suspect's guilt to be more likely true than false.' Instead, the relevant question is whether a 'substantial probability' existed that the suspect committed the crime, requiring something 'more than a bare suspicion.'" *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) (quoting *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011)).

Neither Party attempts to explain what would constitute "probable cause" to believe that Mr. Marshall committed the crimes listed in the arrest warrant. *See* [Doc. 33-1 at 2 ("[P]robable cause exists to believe that [Mr. Marshall] has committed the offense of Theft 18-4-401 a class 3 Felony [sic], violations of the Colorado Organized Crime Control Act, 18-17-101, and Theft 18-4-401 a class 3 felony [sic] pursuant to Moneys For Lien Claims Made Trust Funds - Disbursements 38-22-127 in violation of C.R.S., as amended [sic] within the County of El Paso and State of Colorado.")]. Here, Plaintiff bears the "heavy burden" of alleging facts establishing that Ms. Dix's alleged false statement "was necessary to the finding of probable cause," *Pierce v. Gilchrist*, 359 F.3d 1279, 1295 (10th Cir. 2004), but makes no attempt to establish the materiality of the false statement described in Paragraph 67 of the Amended Complaint to demonstrate that removal of this statement from the Arrest Warrant Affidavit would vitiate probable cause for his arrest. *See generally* [Doc. 37]. In any event, the Court has reviewed the Arrest Warrant Affidavit and notes that even setting aside the assertion that the City, "in order to salvage the agreement to the [USOC,] was forced to directly pay contractors amounts owed in settlement negotiations in order to close on the sale of the Condominiums," [Doc. 33-1 at 15], there are numerous other allegations in the Arrest Warrant Affidavit to support the conclusion that Mr. Marshall engaged in the charged activity. *See, e.g.*, [*id.* at 3 ("Mr. Marshall . . . stole monies . . . and 'laundered' the monies through various bank accounts . . . to accomplish the theft of the funds through a series of fraudulent billing practices."); *id.* at 6-8 (alleging that Mr. Marshall made a number of money transfers through various bank accounts); *id.* at 9 (alleging that an investigator "stated [that] Mr. Marshall was receiving payment from invoices submitted by 'Front Range Constructors' which was not an actual construction company, but merely a sub-company front used by Mr. Marshall to submit 'phony' invoices to the City in order to receive payments"); *id.* at 10 ("Mr. Marshall

through LandCo entity invoices deceptively obtained over $200,000.00.")].  The Court concludes that Mr. Marshall has failed to allege facts demonstrating that absent Ms. Dix's purportedly false statements, the Arrest Warrant Affidavit would not provide probable cause for his arrest. Accordingly, the Court concludes that Mr. Marshall has failed to allege a constitutional violation with respect to his malicious prosecution or *Franks* claims based on the Arrest Warrant Affidavit against Ms. Dix.

### b.   The COPR Requests and Affidavits

Ms. Dix also argues that she is entitled to qualified immunity with respect to the malicious prosecution claim or *Franks* claim insofar as they are based on the COPR requests or affidavits. [Doc. 33 at 14].  She argues that "Plaintiff fails to specifically identify the alleged false and misleading information in the COPR applications and affidavits with the exception of Ms. Dix's alleged attribution of statements to Donald Lester."  [*Id.*]; *see also* [Doc. 25 at ¶ 95 ("[I]n some affidavits Defendant Dix attributes statements to Donald Lester and allege[s] that he was a victim in the 2012 [C]ase.  Mr. Lester states that this is untrue.  He states that he was not a victim of any theft allegedly perpetrated by Mr. Marshall.")].  Again, in response, Mr. Marshall directs the Court to the Sexton Affidavit, arguing that the Sexton Affidavit "shows that virtually every substantive allegation in the Arrest Warrant Affidavit . . . which is in pertinent parts identical to . . . [the] COPR[] Affidavits . . . is false and misleading."  [Doc. 37 at 8].

For the reasons set forth above, *see supra* Section I.D.1.a, the Court declines to rely on facts in the Sexton Affidavit that are unreferenced by and unincluded in the Amended Complaint. Mr. Marshall fails to explain why the identification of Mr. Lester as a victim is so material that its omission would vitiate probable cause in the 2012 Case.  *See* [Doc. 37 at 8-14].  The Court agrees with Ms. Dix that, even setting aside Ms. Dix's identification of Mr. Lester as a crime victim, there

was still probable cause for Plaintiff's 2012 arrest for the reasons discussed in Section I.D.1.a. Accordingly, Mr. Marshall has failed to allege a constitutional violation arising from the COPR requests, and thus, Ms. Dix is entitled to qualified immunity on this portion of Plaintiff's malicious prosecution and *Franks* claims.

Accordingly, the Motion to Dismiss is thus **GRANTED in part** as to Claims One and Three. Claim One, insofar as it is based on the alleged false statement of fact in the Arrest Warrant and Affidavit or the COPR requests,[16] and Claim Three are **DISMISSED without prejudice**. Insofar as Claim One is based on Ms. Dix's alleged failure to turn over all exculpatory evidence after being ordered to do so by the state court, the Motion to Dismiss is **DENIED in part** and the Claim may proceed.

### 2. Due Process

Next, Ms. Dix argues that she is entitled to qualified immunity against Plaintiff's due process claim. *See* [Doc. 33 at 15]. As a preliminary manner, the exact nature of Plaintiff's due process claim is unclear. He frames his second claim as "42 U.S.C. § 1983 Due Process – Fabrication of Evidence," [Doc. 25 at 36], and asserts in this claim that he "had the clearly established constitutional right not to be deprived of liberty as a result of the fabrication of evidence by Defendant Dix," [*id.* at ¶ 110], but then also references Ms. Dix's alleged *withholding* of exculpatory evidence. [*Id.* at ¶ 112]. And in his Response, Mr. Marshall again refers to this claim as a "Fabrication of Evidence" claim, *see* [Doc. 37 at 15], but then also references alleged withholding of evidence. [*Id.* at 16]. The Court thus construes Plaintiff's due process claim as based on both the alleged fabrication of and withholding of evidence; however, Ms. Dix only

---

[16] *See supra* n.13.

addresses this claim as if it is a fabrication of evidence claim; for purposes of this Order, the Court limits its analysis accordingly.

*Constitutional Violation*.  To state a due process claim based on the alleged fabrication of evidence, a plaintiff must allege that "(1) the defendant knowingly fabricated evidence, (2) the fabricated evidence was used against the plaintiff, (3) the use of the fabricated evidence deprived the plaintiff of liberty, and (4) if the alleged unlawfulness would render a conviction or sentence invalid, the defendant's conviction or sentence has been invalidated or called into doubt." *Truman v. Orem City*, 1 F.4th 1227, 1236 (10th Cir. 2021) (footnotes omitted).

Ms. Dix argues that she is entitled to qualified immunity on this claim because Plaintiff "fails to allege that the prosecutors actually used any of the allegedly fabricated evidence against him." [Doc. 33 at 15].  In support, Ms. Dix notes that the criminal charges in the 2012 Case were dismissed with prejudice.  [*Id.* at 16].  Plaintiff responds that use of fabricated evidence *at trial* is not a necessary element of a due process claim.  [Doc. 37 at 15-16].  Rather, according to Plaintiff, Tenth Circuit case law supports the notion that so long as the plaintiff was "harmed" by the fabricated evidence, he can state a due process claim based on that fabrication.  [*Id.* at 16].

The Court does not pass on Plaintiff's argument that it is sufficient to allege generalized "harm" in the context of a fabrication of evidence claim because the Court agrees with Plaintiff that use of fabricated evidence at trial is not a requisite element of Plaintiff's claim.  The Tenth Circuit has rejected the argument "that a defendant's remedy under § 1983 for denial of due process based on the use of false evidence extends only to evidence presented as part of the prosecution's case at trial." *Klen v. City of Loveland*, 661 F.3d 498, 516 (10th Cir. 2011).  In so doing, the Tenth Circuit specifically called out the "[u]se of an indictment based on perjured testimony to bring charges" as "represent[ing] a denial of due process." *Id.*  It follows, then, that the use of false,

sworn statements of fact in an arrest warrant affidavit can serve as the basis for a fabrication of evidence claim. *See id.* Ms. Dix's out-of-Circuit authority suggesting otherwise, *see* [Doc. 33 at 16], does not obviate this Court's duty to follow the Tenth Circuit's binding precedent in *Klen*. Accordingly, the Court is not persuaded by Ms. Dix's argument that Plaintiff fails to allege a constitutional violation.

Similarly, the Court is respectfully not persuaded by Ms. Dix's arguments that Plaintiff cannot state a due process claim because "setting aside the alleged fabricated evidence does not vitiate probable cause given the remaining comprehensive and detailed contents of the affidavit." [Doc. 33 at 16]. Ms. Dix cites no case law for the proposition that, to state a fabrication of evidence claim, a plaintiff must allege that without the fabricated evidence, probable cause would not exist to arrest or prosecute the plaintiff. *See* [*id.*]. Instead, she relies upon a case from the District of New Mexico in suggesting that "[t]o the extent that Plaintiff's fabrication of evidence claim is brought pursuant to the Fourth Amendment, it is virtually indistinguishable from his Fourth Amendment malicious prosecution claim" and thus, "the two claims should be merged." [*Id.* at 16 n.6 (citing *Advantageous Cmty. Servs., LLC v. King*, No. 1:17-cv-00525-LF-KK, 2018 WL 1415184, at *9 (D.N.M. Mar. 21, 2018))]. But the Tenth Circuit has recognized that a due process claim based on the fabrication of evidence is *not* coextensive with a malicious prosecution claim. *See Truman*, 1 F.4th at 1236 n.3 ("[A] fabrication of evidence claim implicates the Constitution, notwithstanding its failure to satisfy the elements of a malicious prosecution claim."). Accordingly, the Court does not find that dismissal of the due process claim is warranted on this basis.

***Clearly Established Law***.  In the alternative, Ms. Dix argues that even if Plaintiff can allege a constitutional deprivation of due process, he cannot "point to a case where a District Attorney's

investigator on the date of the alleged constitutional violation(s) was held to have violated the Fourth and/or Fourteenth Amendments." [Doc. 33 at 18]. This argument is made simultaneously with respect to each of Plaintiff's constitutional claims. *See* [*id.*].

Typically, once a defendant has asserted a defense of qualified immunity, the burden shifts to the plaintiff who must establish that "(1) the public official violated the plaintiff's constitutional rights; and (2) these rights were clearly established at the time of the alleged violation." *Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 864 (10th Cir. 2016). However, the burden on the plaintiff arises only after the doctrine of qualified immunity has been "adequately presented." *Halik v. Darbyshire*, No. 20-cv-01643-PAB-KMT, 2021 WL 4305011, at *5 (D. Colo. Sept. 22, 2021); *see also Tillmon v. Cnty. of Douglas*, No. 18-cv-00492-RBJ-KLM, 2019 WL 1375678, at *12 (D. Colo. Mar. 27, 2019) (where the defendants "offer[ed] no arguments and no law" to support a qualified-immunity defense, declining to rule on qualified immunity "without any briefing from defendants"), *aff'd*, 817 F. App'x 586 (10th Cir. 2020) (declining to address qualified immunity on appeal because the argument was not properly preserved for appeal, as the "analysis of qualified immunity in [the motion to dismiss] was cursory at best" and "consisted of a single paragraph briefly discussing the law of qualified immunity"). Because Ms. Dix's substantive argument on the second prong of the qualified immunity analysis amounts to one substantive sentence, and does not address Mr. Marshall's due process claim specifically, the Court concludes that the defense is not adequately presented and, therefore, the burden never shifted to Plaintiff to establish that the law was clearly established at the time of the alleged violation. The Court thus concludes that Ms. Dix has not demonstrated that she is entitled to qualified immunity against Plaintiff's due process claim.

### 3. Conspiracy

Finally, Ms. Dix argues that "Plaintiff's vague, conclusory and formulaic allegations in support of his conspiracy claim fail to state a claim upon which relief can be granted." [Doc. 33 at 16-18]. Because this argument is included in the section of Ms. Dix's Motion arguing that she is entitled to qualified immunity, the Court construes this as an argument that Plaintiff fails to allege a constitutional violation with respect to Plaintiff's conspiracy claim.

"To state a conspiracy claim under § 1983, a plaintiff must plead that he was deprived of a constitutional right as a result of a conspiracy comprised of or including conspirators acting under color of state law." *Leatherwood v. Rios*, 705 F. App'x 735, 739 (10th Cir. 2017). To survive a motion to dismiss, "a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient." *Snell*, 920 F.2d at 701 (quotation and citation omitted). Thus, insofar as the Court has already concluded that Ms. Dix is entitled to absolute immunity or qualified immunity against Plaintiff's claims asserting underlying constitutional violations, Mr. Marshall necessarily cannot state a conspiracy claim under Rule 12(b)(6) based on violations of those same constitutional rights. *See N.E.L. v. Douglas Cnty.*, 740 F. App'x 920, 931 n.22 (10th Cir. 2018); *accord Mowbray v. Cameron Cnty.*, 274 F.3d 269, 277 (5th Cir. 2001) ("As a matter of logic, a person may not be prosecuted for conspiring to commit an act that [s]he may perform with impunity." (quotation and alteration marks omitted)). Accordingly, the Court considers Plaintiff's conspiracy claim against Ms. Dix only insofar as Ms. Dix is not immune from suit.[17]

---

[17] In other words, Mr. Marshall necessarily cannot state a conspiracy claim against Ms. Dix with respect to any conspiracy to commit a *Franks* violation, *supra* Section I.D.1, any conspiracy to violate Plaintiff's constitutional rights based on the failure to include material facts in the Arrest Warrant Affidavit or turn over evidence before the state court order, *supra* Section I.C, or any

"A conspiracy requires the combination of two or more persons acting in concert." *Salehpoor v. Shahinpoor*, 358 F.3d 782, 789 (10th Cir. 2004) (alteration marks, quotation, and citation omitted). Thus, a plaintiff asserting a conspiracy claim must allege a meeting of the minds or an agreement among the defendants, *id.*, as well as some concerted action. *Bledsoe v. Jefferson Cnty.,* 275 F. Supp. 3d 1240, 1259 (D. Kan. 2017). "An express agreement among all the conspirators is not a necessary element of a civil conspiracy." *Snell*, 920 F.2d at 702. Rather, "[t]o demonstrate the existence of a conspiratorial agreement[,] it simply must be shown that there was a single plan, the essential nature and general scope of which was know[n] to each person who is to be held responsible for its consequences." *Id.* (quotation omitted and alteration marks changed).

Ms. Dix argues that "Plaintiff's vague, conclusory and formulaic allegations in support of his conspiracy claim fail to state a claim upon which relief can be granted"—and thus, fail to sufficiently allege a constitutional violation for qualified immunity purposes. [Doc. 33 at 17]. In his Response, Mr. Marshall contends that he "sufficiently alleges [that Ms.] Dix conspired not only with [District Attorney] Dan May – who was the conspirator working most closely with the City Defendants – but also with [Assistant District Attorney] Lanny Anderson." [Doc. 37 at 19].[18] Moreover, he asserts:

> The conspiracy began in 2009, when the City Defendants decided to set up Mr. Marshall, tank the deal, and frame him. It continued when Dan May came on board as District Attorney and conspired with them and when he later enlisted Dix to prepare and file the false and misleading affidavit. The timing and sequence of events -- which Dix ignores -- is circumstantial evidence of a conspiracy.

[*Id.* at 19]. While Mr. Marshall cites to the Sexton Affidavit and the Arrest Warrant Affidavit in support of his argument, he does not cite to or reference any allegations in his Amended Complaint.

---

conspiracy to maliciously prosecute Plaintiff based on false statements in the Arrest Warrant Affidavit or COPR requests. *Supra* Section I.D.1.a-b.

[18] Attorneys May and Anderson are not named as defendants in this matter. [Doc. 25 at 1].

*See* [*id.*].[19]

The Court "need not sift through Plaintiff['s] entire complaint in search of a coherent theory of [his] conspiracy claim." *Afola v. Corr. Corp. of Am.*, No. 12-cv-02394-JLK, 2013 WL 2477126, *4 (D. Colo. June 10, 2013). Nevertheless, based on the Court's independent review of the Amended Complaint, and only to the extent that Ms. Dix is not entitled to absolute immunity or qualified immunity, the Court agrees with Ms. Dix that Mr. Marshall fails to state a conspiracy claim against her.

Mr. Marshall alleges generally that "Defendant Dix conspired with numerous individuals to violate Mr. Marshall's constitutional rights, including, but not limited to Defendant Anderson, the City Council Defendants, the City, and Allen Brown and Sam Guadignoli and others yet to be identified." [Doc. 25 at ¶ 33]. With respect to the alleged withholding of evidence in discovery after the state court order, Mr. Marshall alleges that "the City, City Council Defendants, Defendant Anderson and Defendant Dix had conspired to hide [the evidence] at the time of the compelled disclosure," [*id.* at ¶ 71], and that this evidence "clearly shows that . . . certain key people at the City . . . were colluding against Mr. Marshall to sabotage the closing so they could insulate themselves from adverse market conditions." [*Id.*].

The Court respectfully concludes that Plaintiff's allegations are conclusory and are insufficient to allege a conspiracy in this case. To sufficiently state a conspiracy claim, a plaintiff must allege "*specific facts* showing an agreement and concerted action amongst the defendants." *Leatherwood*, 705 F. App'x at 739 (emphasis added) (quotation and citation omitted). The Amended Complaint contains insufficient facts to plead either an agreement or concerted action

---

[19] Insofar as Plaintiff's argument suggests that everything contained within the Sexton Affidavit is necessarily incorporated by reference into the Amended Complaint, the Court disagrees, as explained above in Section I.D.1.a.

here. "[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 557. Mr. Marshall's generalized conclusions that Ms. Dix acted in concert with every other named Defendant, as well as named and unnamed non-parties, are "fine insofar as [they] summarily describe[] what is being alleged," but they "conspicuously fail[] to allege any *facts* which constitute the described conduct." *Lucas v. The Bd. of Cnty. Comm'rs of the Cnty. for Larimer Cnty.*, No. 19-cv-01251-WJM-SKC, 2020 WL 5642321, at *10 (D. Colo. Sept. 22, 2020). "Such conclusory allegations do not contain sufficient facts that 'might move the claim from sheer possibility to plausibility.'" *Id.* (quoting *Chamberlain v. Dunker*, No. 13-cv-03037-CMA-MJW, 2014 WL 3373554, at *3 (D. Colo. July 9, 2014)).

As a result, the Court concludes that Mr. Marshall fails to state a § 1983 conspiracy claim against Ms. Dix. Ms. Dix is therefore entitled to qualified immunity against this claim. The Motion to Dismiss is thus **GRANTED** with respect to Claim Four against Ms. Dix.

### E.    Standing

Finally, Ms. Dix argues that Plaintiff lacks prudential standing to "prosecute this case" because Mr. Marshall filed for bankruptcy and any claims belong to the bankruptcy estate. [Doc. 33 at 18]. Ms. Dix's argument is limited to (1) Plaintiff's "claims related to the 2009 [C]ase" and (2) Mr. Marshall's *Franks* claim. [*Id.* at 19]. However, this Court has already concluded that (1) Mr. Marshall cannot seek relief from any harm arising out of the 2009 Case, as any such claims would be barred by the statute of limitations; and (2) Ms. Dix is entitled to qualified immunity on Mr. Marshall's *Franks* claim. *See supra* Sections I.B, I.D.1. Accordingly, the Court does not substantively address this argument.

For the reasons set forth above, Ms. Dix's Motion to Dismiss is **GRANTED in part** and **DENIED in part** as set forth in this Order. It is **GRANTED** with respect to Mr. Marshall's claims

against Ms. Dix insofar as they are based on (1) the 2009 Case; (2) the failure to turn over evidence

prior to any court order; and (3) the alleged withholding of material facts from the Arrest Warrant

Affidavit.  It is further **GRANTED** with respect to Claim One insofar as it is based on Ms. Dix's

alleged fabrication of statements in the Arrest Warrant Affidavit or COPR requests.  And finally,

the Motion to Dismiss is **GRANTED** with respect to Claims Three and Four in their entirety.  In

sum, Mr. Marshall's Claim One and Claim Two **REMAIN** insofar as they are based on Ms. Dix's

alleged withholding of discovery after being ordered to turn over that discovery by the state court.

## II.     The City Motion to Dismiss

Next, the City Defendants move to dismiss Plaintiff's claims against them for failure to

state a claim under Rule 12(b)(6).  [Doc. 34].  As an initial matter, the City Defendants argue in

their Motion that Plaintiff's first three claims "are brought against Ms. Dix only, while the last two

also include the City Defendants," [*id.* at 6], but nevertheless raise 12(b)(6) arguments with respect

to Claims One, Two, and Three.  [*Id.* at 8-15].  Mr. Marshall appears to agree that Claims One,

Two, and Three are not raised against the City Defendants, stating that "the City Defendants are

correct on one point:  Mr. Marshall does not at this point allege that their conduct supports stand-

alone allegations of malicious prosecution . . ., fabrication of evidence . . ., and *Franks* violations."

[Doc. 38 at 5].  Instead, Mr. Marshall represents that he "rightly accuses [the City Defendants] of

conspiracy to further those violations" in Claim Four.  [*Id.*].  Based on Mr. Marshall's clarification,

the Court construes Claims One, Two, and Three as asserted against Ms. Dix only.  Accordingly,

the Court addresses the City Defendants' Motion to Dismiss only with respect to Claims Four and

Five.

A.      **Conspiracy**

In their Motion to Dismiss, the City Defendants contend that Plaintiff's conspiracy claim should be dismissed for failure to state a claim under Rule 12(b)(6).  [Doc. 34 at 15-17].  First, they argue that Mr. Marshall fails to allege that the City Defendants "knew anything about or participated in the 2012 prosecution," which forms the basis of the conspiracy claim.  [*Id.* at 16].  Furthermore, they maintain that Plaintiff makes no specific factual allegations demonstrating that they knew anything about "the essential nature and general scope" of Ms. Dix's purported plan to cause Mr. Marshall's arrest in 2012 and, similarly, argue that Plaintiff raises no factual allegations demonstrating a concerted action by the City Defendants.  [*Id.*].[20]

In his Response, Mr. Marshall contends that he "has sufficiently alleged that the City Defendants conspired to prosecute and convict [him] for crimes they knew he didn't commit" because the "City Defendants are heard on tape recordings planning to make themselves 'victims' and [to] see that Mr. Marshall winds up in jail."  [Doc. 38 at 6].  He asserts that this is supported by "direct and circumstantial evidence of the common goal – to set up Mr. Marshall and see him in jail so the City could acquire its desired property at a steep discount and cover up its own wrongdoing in connection with the City Defendants['] intentional tanking of the project."  [*Id.* at 6-7].  He directs the Court to a few allegations in his Amended Complaint which he believes supports his conspiracy claim.  *See* [*id.* (citing Doc. 25 at ¶¶ 57, 73-87)].

In these allegations, Mr. Marshall asserts that although Ms. Dix was in possession of audio recordings and emails "which proved that the City and USOC were to blame for sabotaging the closing of the EDA and the PSA," that Ms. Dix hid that evidence for a decade, and that she "did

---

[20] Insofar as the City Defendants argue that it is temporally impossible that the City Council Defendants could have participated in a conspiracy, *see* [Doc. 34 at 16], the Court declines to address this argument, as it would require considering matters outside of the operative pleading.

this at the urging of and in conjunction with the City, City [Council] Defendants and Defendant Anderson." [Doc. 25 at ¶ 73]. He further asserts that "Defendant Dix and the City entered into an agreement to hold those tapes secret. " [*Id.* at ¶ 74]; *see also* [*id.* at ¶ 77 (referencing a "common interest agreement" to withhold the evidence)]. Finally, he alleges that "[t]he City, City Council Defendants, Defendant Anderson and Defendant Dix had conspired for years to keep the emails and tapes secret in order to continue the malicious prosecution against Mr. Marshall." [*Id.* at ¶ 76]. Mr. Marshall asserts that the audio tapes "shows [the City Defendants'] clear involvement in the malicious prosecution of Mr. Marshall and their involvement in conspiring with Defendant Dix to violate Mr. Marshall's other constitutional rights to be free from fabrication of evidence and hiding of evidence and his rights under *Franks v. Delaware*." [*Id.* at ¶ 79].

The Court agrees that Mr. Marshall fails to sufficiently allege a concerted action on the part of the City Defendants. Plaintiff's allegations, though numerous, are largely conclusory and lacking in factual support. "Mere conclusory assertions about the existence of a conspiratorial agreement are insufficient to state a claim." *Moses-El v. City & Cnty. of Denver*, 376 F. Supp. 3d 1160, 1175 (D. Colo. 2019). "To sufficiently allege joint action," a plaintiff must allege facts that manifest a "'specific goal to violate the plaintiff's constitutional rights by engaging in a particular course of action.'" *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1264 (D. Kan. 2008) (quoting *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1455 (10th Cir. 1995)). Here, Plaintiff fails to allege any *specific* actions taken by any of the individual City Defendants to plausibly allege the existence of a concerted action. *See Carbajal*, 808 F. App'x at 636 (where the complaint did "not allege that [the defendants] took any actions in furtherance of the supposed conspiracy," concluding that "the complaint fail[ed] to allege concerted action amongst the Defendants."). For example, while Mr. Marshall alleges that Ms. Dix entered into an agreement with "the City" to

keep the evidence undisclosed, he does not identify with whom the agreement was allegedly made. Nor does he specifically identify which City Defendants "urged" Ms. Dix to keep the tapes secret. Moreover, the Amended Complaint is completely lacking in any specific factual allegations with respect to Defendants Radford, Martin, Small, or Anderson, so as to allege that these individual City Defendants engaged in *any* action, concerted or otherwise, for purposes of the conspiracy claim.[21]   "[T]o state a claim in federal court, a [plaintiff] must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007); *Williams v. Dist. Nine Task Force*, No. CIV-05-777-C, 2006 WL 2850484, at *8 n.15 (W.D. Okla. Sept. 29, 2006) (where the plaintiff asserted "no allegations whatsoever" against certain named defendants, the plaintiff failed to state a § 1983 claim against those defendants).

At best, Mr. Marshall alleges that Defendant Hente "can be heard on tapes and seen in emails and other documents stating that he was meeting with the elected District Attorney Dan May to see if there were ways to bring charges against Mr. Marshall in another attempt to circumvent the USOC real estate deal." [Doc. 25 at ¶ 78(E)].  But an allegation that Mr. Hente represented that he planned to inquire about Attorney May bringing charges against Mr. Marshall, on an unspecified date, does not allege any specific action on the part of Mr. Hente that establishes

---

[21] While Mr. Marshall alleges that Ms. Radford was heard on an audio tape suggesting that the City Council "ha[d] to let [Mr. Marshall] fall on his face and clean up after him," which might permit the City to "kick his ass out of the deal and then get the building at a fire sale," [Doc. 25 at ¶ 78(A)], there are no allegations that Ms. Radford took any specific actions related to the alleged conspiracy. *See generally* [*id.*].  Similarly, while Plaintiff raises a few specific allegations with respect to statements of Michael Anderson, [*id.* at ¶ 78(C)-(D)], there are no allegations of any actual *actions* taken by Mr. Anderson, so as to allege that he engaged in any concerted action for purposes of the conspiracy.

his participation in concerted action, and there are no factual allegations in the Amended Complaint tying Mr. Hente's alleged statement to any of the specific conduct allegedly undertaken by Ms. Dix or Attorney May in initiating the charges against Mr. Marshall.  "Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 556-57.[22]

In sum, the Court concludes that the Amended Complaint contains insufficient factual allegations to state a conspiracy claim against any of the City Defendants.  Accordingly, the City Defendants' Motion to Dismiss is **GRANTED** with respect to this claim, and Claim Four is **DISMISSED without prejudice** with respect to the City Defendants.

### B.    Municipal Liability

Finally, the City Defendants argue that Plaintiff's Claim Five should be dismissed for failure to state a claim.  [Doc. 34 at 17-18].[23]

---

[22] Despite Mr. Marshall's assertion in his Response that Mr. Hente provided false statements to Ms. Dix, which were then used in the Arrest Warrant Affidavit, *see* [Doc. 38 at 15-16, 17-18], the Amended Complaint contains no allegations that Mr. Hente provided false statements to Ms. Dix or that this was part of any alleged conspiracy.  *See generally* [Doc. 25].  The Court declines to comb through the multiple pages of the Arrest Warrant Affidavit, multiple pages of the Sexton Affidavit, and Mr. Lester's affidavit as a whole, which Mr. Marshall cites in support of his assertion that Mr. Hente provided false information to Ms. Dix.  *See* [Doc. 38 at 17-18].  Mr. Marshall cannot decline to include purportedly material allegations in his Amended Complaint and rely on voluminous exhibits to survive a Motion to Dismiss.  *See Gray*, 2020 WL 374435, at *3.

[23] Claim Five specifically states that it is raised "[a]gainst City of Colorado Springs."  [Doc. 25 at 41].  However, Mr. Marshall purports to include the individual City Defendants in this claim, as well.  *See, e.g.*, [*id.* at ¶¶ 134, 137].  However, the Court does not construe Claim Five as asserted against the individual City Defendants, as "[a]n action against a person in his official capacity is, in reality, an action against the government entity for whom the person works."  *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998).

Government entities can be sued directly only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).  "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

In order to state a claim for municipal liability under § 1983, a plaintiff must allege (1) the existence of an official policy or custom; and (2) that the official policy or custom was the driving force behind the constitutional violation alleged.  *See Erickson v. City of Lakewood*, 489 F. Supp. 3d 1192, 1205 (D. Colo. 2020).[24]  A plaintiff may show the existence of an official policy custom by showing the existence of:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage

---

[24] The City Defendants also argue that Plaintiff must allege "a culpable state of mind, i.e., specific allegations that the policy or custom was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury."  [Doc. 34 at 17].  Other courts in this District have held that "[d]eliberate indifference is required only for municipal liability based upon a failure to adequately train or supervise," while other *Monell* claims "require only the existence of a policy and causation."  *Epps v. City & Cnty. of Denver*, No. 1:20-cv-01878-RBJ, 588 F. Supp. 3d 1164, 1175 n.4 (D. Colo. 2022) (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989) and *Waller*, 932 F.3d at 1283–84); *Trujillo v. City & Cnty. of Denver*, No. 16-cv-01747-WJM-MJW, 2017 WL 1364691, at *4 (D. Colo. Apr. 14, 2017) ("[A] failure to train theory requires proof of deliberate indifference, whereas a policy/custom theory does not.") (discussing authority).  Indeed, the Supreme Court has held that "the inadequacy of [government] training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [government officials] come into contact." *Canton*, 489 U.S. 378, 388 (1989); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) (explaining that a municipality's culpability is "at its most tenuous" where the theory of liability is failure to train, and only when the failure amounts to deliberate indifference "can such a shortcoming be properly thought of as a city 'policy or custom'" quotation omitted)).  The Court need not rule on this issue to decide the Motion to Dismiss.

with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotation, alteration marks, and citations omitted). Mr. Marshall's *Monell* claim is based on a final-policymaker theory of relief. *See* [Doc. 25 at ¶¶ 135-36; Doc. 38 at 19].

The City Defendants argue, *inter alia*, that Plaintiff fails to state a *Monell* claim against the City because he "offers no allegations that [the] City Council [Defendants] ever formally acted." [Doc. 34 at 18]. In response, Plaintiff contends that he "alleges various City Council Defendants participated in the plan to frame him by fabricating inculpatory evidence and withholding exculpatory evidence, and that is sufficient at the pleading stage." [Doc. 38 at 20]. Plaintiff further states that "[a] decision about whether, following discovery, Mr. Marshall will be able to prove his claims is premature." [*Id.* at 21]. Mr. Marshall references no specific allegations in the Amended Complaint that he believes are sufficient to support a *Monell* claim. *See* [*id.*].

"[I]f an official, who possesses final policymaking authority in a certain area, makes a decision—even if it is specific to a particular situation—that decision constitutes municipal policy for § 1983 purposes." *Randle v. City of Aurora*, 69 F.3d 441, 447 (10th Cir. 1995). "A single act of an employee may be imposed on a local governmental entity if the employee possesses final authority to establish policy with respect to the challenged action." *Ireland v. Jefferson Cnty. Sheriff's Dep't*, 193 F. Supp. 2d 1201, 1226 (D. Colo. 2002). To sufficiently state a *Monell* claim based on the alleged decisions of final policymakers, a plaintiff must allege facts indicating that the policymakers had "'final policy making authority' . . . on the basis of a decision specific to a particular situation." *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1250 (10th Cir. 1999).

Mr. Marshall alleges in his Amended Complaint that:

> The actions and decisions of the City of Colorado Springs, through City Council members, including but not limited to Michael Anderson, [Margaret] Radford, Jan Martin and Larry Small,[25] and other City decision[-]making employees, as employees of the City of Colorado Springs with final policymaking authority, violated Mr. Marshall's rights to be free from malicious prosecution, to not have evidence against him fabricated and not to have his rights pursuant to *Franks v. Delaware* violated.

> The City Council members, as decision makers with final decision-making authority for the City of Colorado Springs, made decisions that were in direct violation of Mr. Marshall's constitutional rights, as detailed above.

[Doc. 25 at ¶¶ 135-36]. However, Mr. Marshall fails to identify the "decisions that were in direct violation of [his] constitutional rights" that were purportedly made by the City Defendants. *See generally* [*id.*]. While Plaintiff argues that he has sufficiently alleged that the City Defendants "participated in the plan to frame him by fabricating inculpatory evidence and withholding exculpatory evidence," [Doc. 38 at 20], there are no allegations in the Amended Complaint asserting that any of the specific policymaking individual City Defendants themselves fabricated or withheld evidence; instead, all of the allegations of such specific conduct involve only Ms. Dix. *See generally* [Doc. 25]. And insofar as Mr. Marshall asserts that the City Defendants generally "conspir[ed] . . . to have Mr. Marshall falsely charged and maliciously prosecuted," [*id.* at ¶ 59], "conspired to hide" evidence, [*id.* at ¶ 71], "conspired and schemed" to "build false allegations against" him, [*id.* at ¶ 72], or any of the other similar, generalized allegations, these conclusory statements fail to identify a specific decision made by any particular member of the Colorado Springs City Council with final policymaking authority. *See Calvo-Pino v. Weidl*, 514 F. Supp. 3d 1321, 1328 (D. Kan. 2021) (finding that the plaintiff failed to state a *Monell* claim based on the

---

[25] Mr. Marshall does not specifically allege that Mr. Hente had final policymaking authority. *See* [Doc. 25 at ¶¶ 135-36].

decisions of policymakers where she had not alleged facts establishing that the defendants "in fact made or ratified a decision as final policymakers that caused the constitutional violation").

Moreover, even if these allegations were sufficiently substantive and detailed, there are no facts from which the Court could conclude that the challenged action—the purported decision to conspire to maliciously prosecute Mr. Marshall—was actually a final *policy* decision. Final policymakers "possess[] final authority to establish *municipal policy* with respect to the action ordered," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (emphasis added), and Mr. Marshall does not allege any facts in the Amended Complaint demonstrating that the individual City Defendants possess authority to establish municipal policies governing the fabrication or withholding of evidence. And "there are no facts from which to infer that any given Defendant held final policymaking authority as to the decisions purportedly rendered." *Cuervo v. Sorenson*, No. 20-cv-00671-WJM-GPG, 2022 WL 4969692, at *9 (D. Colo. Oct. 4, 2022).

"[A]t the pleading stage, the existence of a *Monell* policy is a conclusion to be built up to, rather than a fact to be baldly asserted." *Erickson*, 489 F. Supp. 3d at 1206 (citation and internal quotations omitted). Here, the Court concludes that the Amended Complaint fails to allege sufficient facts so as to state a claim for municipal liability under *Monell*. Accordingly, the City Defendants' Motion to Dismiss is **GRANTED** with respect to Claim Five, and Claim Five is **DISMISSED without prejudice**.

### III. Leave to Amend

In his Response to Ms. Dix's Motion to Dismiss, Mr. Marshall argues that he should be granted leave to amend "because most of [Ms.] Dix's complaints relate to the structure of" his Amended Complaint. [Doc. 37 at 3]; *see also* [*id.* at 14 (arguing that any deficiencies in his pleading are "curable through amendment")]. The Court declines to grant leave to amend at this

juncture.  "A district court may deny leave to amend when 'a plaintiff fails to file a written motion and instead 'merely suggests she should be allowed to amend if the court concludes her pleadings are infirm.'"  *Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) (quoting *Warnick*, 895 F.3d at 755); *see also Brever v. Rockwell Int'l Corp.,* 40 F.3d 1119, 1131 (10th Cir. 1994) (explaining that district courts are not required "to engage in independent research or read the minds of litigants to determine if information justifying an amendment exists").  Moreover, under the Local Rules of Practice for this District, "[a] motion shall not be included in a response or reply to the original motion" and must instead "be filed as a separate document."  D.C.COLO.LCivR 7.1(d).  The Court declines to grant leave to amend absent a procedurally proper formal motion that addresses the applicable standards under Rules 15 of the Federal Rules of Civil Procedure.  Should Plaintiff wish to amend his Amended Complaint, he must file a motion to amend, and **only after a robust meet and confer with the opposing Parties**.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)    Defendant Chief Investigator Linda Dix's Motion to Dismiss [Doc. 33] is **GRANTED in part** and **DENIED in part**;

(2)    Claim One, to the extent it is based on Ms. Dix's alleged withholding of discovery after being ordered to turn over that discovery by the state court, **REMAINS**.  In all other respects, it is **DISMISSED without prejudice**;

(3)    Claim Two, insofar as it is based on Ms. Dix's alleged fabrication of allegations in the Arrest Warrant Affidavit or failure to turn over discovery after being ordered to do so by the state court, **REMAINS**.  In all other respects, it is **DISMISSED without prejudice**;

(4) Claims Three and Four are **DISMISSED without prejudice** in their entirety as to Ms. Dix;

(5) The Motion to Dismiss Under Rule 12(b)(6) by the City Defendants [Doc. 34] is **GRANTED**;

(6) Claims Four and Five are **DISMISSED without prejudice** in their entirety as to Defendants Anderson, Radford, Martin, Hente, Small, and the City of Colorado Springs;

(7) Defendants Anderson, Radford, Martin, Hente, Small, and the City of Colorado Springs are **DISMISSED** as Defendants in this matter;

(8) Within **seven days** of the date of this Order, counsel for Mr. Marshall and Ms. Dix shall jointly contact the chambers of Magistrate Judge Varholak to set a Scheduling Conference in this case; and

(9) Within **fourteen days** of the date of this Order, Ms. Dix **SHALL ANSWER** the Amended Complaint.

DATED:  November 14, 2022     BY THE COURT:

               _____

               Nina Y. Wang
               United States District Judge